UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ROBIN PIANOFORTE,

                Plaintiff,

               v.

LITTLE RED SCHOOL HOUSE,

                Defendant.
_____

**OPINION AND ORDER**

21 Civ. 5003 (ER)

Ramos, D.J.:

      Robin Pianoforte, proceeding *pro se*, brings this lawsuit against The Little Red School House and Elisabeth Irwin High School ("LREI"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Rehabilitation Act of 1973, the American with Disabilities Act of 1990 ("ADA"), 29 U.S.C. § 621 et seq., the Federal Civil Rights Act, 42 U.S.C. § 1981 ("§ 1981"), the Family Medical Leave Act ("FMLA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Specifically, Pianoforte alleges that LREI fired her because of her race, sex, age, and disability status, as well as to retaliate against her for previously filing a worker's compensation claim.

      LREI[1] now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim upon which relief can be granted. In particular, LREI asserts that the claims arising out of Pianoforte's Equal Employment Opportunity Commission ("EEOC") complaint are time-barred, and that all remaining claims are either

---

[1] Defendant was originally sued as "Little Red School House." Hereinafter Defendant will be captioned as The Little Red School House and Elisabeth Irwin High School, or LREI. *See* Doc 15. Declaration of Nina Massen ¶ 1.

insufficiently pled or outside of this Court's jurisdiction. For the reasons set forth below, LREI's motion is GRANTED.

I.     BACKGROUND[2]

Pianoforte identifies as a "White and American Indian woman over forty," and was employed at LREI as a receptionist from 2013 to 2020.[3] Doc. 2 ("Complaint") at 5. She alleges that on April 19, 2016, she suffered an injury on the job when she "was struck by a ball to the head and face." Doc. 19 ("Plaintiff's Response in Opposition to Defendant's Motion to Dismiss") at 5. She alleges that she was later diagnosed with a concussion, traumatic brain injury, head injury, and post-traumatic stress disorder. Doc. 11 ("Amended Complaint") at 5. After her diagnoses, Pianoforte filed a worker's compensation claim. *Id.* Pianoforte does not state when exactly she filed her claim for worker's compensation. However, she does allege

---

[2] The facts recited herein are taken from the original complaint, Doc. 2, the amended complaint, Doc. 11, and Pianoforte's response in opposition to the motion to dismiss, Doc. 19. When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). In the amended complaint, Pianoforte neglected to restate the claims included in the original complaint, believing that the second complaint supplemented, rather than replaced, the original complaint. "Since *pro se* civil rights complaints should be read with generosity," Pianoforte's complaint "must be given the benefit of incorporation." *Camarano v. City of New York*, 624 F. Supp. 1144, 1147–48 (S.D.N.Y. 1986); *see also Fleming v. City of New York*, No. 10 Civ. 3345 (AT), 2014 WL 6769618 (S.D.N.Y. 2014). Pianoforte's two complaints will, therefore, be read as one. Additionally, although on a Rule 12(b)(6) motion a district court generally must confine itself to the four corners of the complaint, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), a court may also consider allegations in a *pro se* litigant's brief in opposition to a motion to dismiss that are consistent with the allegations in the complaint. *See Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering allegations in *pro se* plaintiff's affidavit submitted in opposition to defendants' motion to dismiss). The Court finds that certain of the facts alleged in Pianoforte's opposition to LREI's motion to dismiss may properly be considered in connection with the motion.

[3] LREI submits a copy of the "Authorization of Background Investigation," a document completed and executed by Pianoforte on December 28, 2015, which attests that her birthday is September 2, 1980. Doc. 15-5. Thus, Pianoforte was thirty-nine years old when she was terminated by LREI in June 2020. In general, "[i]f, on a motion under Rule 12(b)(6) … matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. Rules Civ. Proc. Rule 12(d). When documentary evidence submitted by a defendant is "integral" to the complaint, however, the Court may take judicial notice of that evidence without converting the motion to dismiss to a motion for summary judgment pursuant to Rule 12(d). *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). The Court finds that Doc. 15-5, submitted by LREI, is integral to Pianoforte's claim that she was discriminated against because of her age.

that, in light of these injuries, she receives worker's compensation and attends multiple weekly Workers' Compensation medical appointments. *Id*.

Pianoforte alleges that after her diagnoses and worker's compensation claim, LREI did not accommodate her disability. *Id*. Pianoforte does not allege what, if any, accommodations she requested that were denied. However, following the instructions of her "Workers Compensation doctor," she allegedly stopped working directly with students in order to avoid the possibility of sustaining a second brain injury. Doc. 19 at 5. According to Pianoforte, this was one of "the major deciding factors" in LREI's decision to terminate her. *Id*.

Pianoforte also alleges that LREI harassed her, subjected her to a hostile work environment, treated her differently than other employees, and did not promote her. Doc. 11 at 5. As to her claims of harassment and a hostile work environment, Pianoforte alleges that her LREI colleagues openly questioned whether she had truly been injured. For instance, Phil Kassen, LREI school director, told her that her worker's compensation injury was "not possible," Doc. 11 at 5, emphasizing that it was "only a children's ball" that had struck Pianoforte. Doc. 19 at 7. Eileen Dougherty, her co-worker, told her she was "not injured and should find a job at another place." *Id*. Other colleagues allegedly subjected Pianoforte to further mistreatment, apparently based on the perception that she was not actually injured; Mary Shea, for example, allegedly yelled "you are crazy" at Pianoforte "over and over… in front of fellow co-workers, parents and caregivers," and Susan Glass told Pianoforte that she was not allowed to use the restroom while at work. Doc. 19 at 8. Although Pianoforte does not make any specific allegations demonstrating that she was treated differently from other employees, she does allege that she was denied an opportunity for promotion. Doc. 11 at 5. In one instance, Pianoforte was allegedly not informed of an opening for a more senior position, which was eventually offered to

another individual.  *Id*.; Doc. 19 at 6.  Pianoforte was allegedly told to train this new employee.  Doc. 19 at 6.  Moreover, Pianoforte's hours were allegedly cut and "given away" to a Hispanic woman named Alba.  *Id*.  There is no indication as to when these events occurred.

In June 2020, approximately four years after she sustained the injury that led to her worker's compensation claim,[4] Doc. 11 at 5, Pianoforte was terminated.  Doc. 2 at 5.  She alleges that she was told it was because the receptionist position was being eliminated due to the COVID-19 pandemic.  Doc. 19 at 3.  But, she alleges, shortly after her termination, in September 2020, the receptionist position was filled by a Hispanic man in his twenties named Pedro Ramirez.  Doc. 2 at 5; Doc. 19 at 3.  Pianoforte claims that Ramirez did not have experience as a receptionist, having been previously employed as a stock associate at Zara USA, and self-employed as an illustrator and graphic designer.  Doc. 19 at 3.  Pianoforte further alleges that Ramirez worked the same hours she worked and had the same responsibilities and duties she had.  *Id.* at 2.  Pianoforte believes that the decision to terminate her was in retaliation for her worker's compensation claim, and was an act of discrimination on the basis of her age, race, sex, and disability status.  Doc. 11 at 5; Doc. 2 at 5.  Pianoforte alleges that as a result of these actions, she suffered mentally, physically and financially.  Doc. 11 at p. 6.

Pianoforte filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") on November 9, 2020.  Doc. 15-1.  In her EEOC complaint, Pianoforte alleged that LREI discriminated against her in violation of the ADEA and Title VII.  *Id*.  On February 3, 2021, she was issued a "Notice of Right to Sue."  Doc. 2-1.  The letter informed Pianoforte that she had 90 days from receipt of the notice to file her lawsuit.  *Id*.  However, Pianoforte did not

---

[4] Pianoforte does not allege when she filed her worker's compensation claim.

file her complaint until 121 days later, on June 4, 2021.  Doc. 2.  In her complaint, Pianoforte alleges that LREI discriminated against her in violation of the ADEA, Title VII, § 1981, the Rehabilitation Act of 1973, the ADA, the FMLA, NYSHRL and NYCHRL.  On August 20, 2021, she amended her complaint, alleging that LREI subjected her to disparate treatment, harassment, and retaliation for filing a worker's compensation claim.  Doc. 11 at 5.  On September 20, 2021, LREI moved to dismiss the amended complaint pursuant to Rule 12(b)(6).  Doc. 13.

## II.   LEGAL STANDARD

The question on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of plaintiff's claims.  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8, a complaint must

contain sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

The same standard applies to motions to dismiss for *pro se* plaintiffs. *Davis v. Goodwill Indus. of Greater New York & New Jersey, Inc*., No. 15 Civ. 7710 (ER), 2017 WL 1194686, at *5 (S.D.N.Y. 2017) (citing *Zapolski v. Fed. Repub. of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011)). The Court remains obligated to construe a *pro se* complaint liberally, and to interpret a *pro se* plaintiff's claims as "rais[ing] the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d. Cir. 2006) (citing *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Nevertheless, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. A *pro se* complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id*. (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 557).

III.   DISCUSSION

### a. EEOC Claims

Pianoforte's complaint includes claims under Title VII, the ADA, the Rehabilitation Act of 1973,[5] and the ADEA. Doc. 2. Each of these federal laws is enforced by the EEOC. An action arising out of an EEOC investigation "must be filed within ninety days of the claimant's receipt of a right to sue letter[.]" *Sherlock v. Montefiore Medical Center*, 84 F.3d 522, 525 (2d Cir. 1996) (citations omitted). The Right-to-Sue letter Plaintiff received from the EEOC is dated February 3, 2021. Doc 2 at 1. "The law presumes that the mail was delivered in three days, in the ordinary course." *Gan v. IBM*, 348 F. Supp. 2d 273 (S.D.N.Y. 2004) (citing *Sherlock*, 84 F.3d at 526). Thus, the Court assumes the ninety-day period began to run on February 6, 2021. The claims arising out of Pianoforte's EEOC Right-to-Sue letter expired, therefore, on May 7, 2021. Pianoforte did not file her original complaint until June 7, 2021, 28 days after May 7.

Pianoforte requests that the Court consider the extenuating circumstances that led to her untimely filing and equitably toll her EEOC-based claims. In particular, Pianoforte points to her status as a *pro se* plaintiff, as well as the mental and physical troubles that apparently prevented her from timely filing her lawsuit. She also indicates that Covid-19-related barriers to navigating the federal court system as a *pro se* plaintiff made filing this lawsuit particularly confusing and onerous.

---

[5] It is unclear whether Pianoforte even meant to bring a Rehabilitation Act claim. In neither of her complaints does Pianoforte allege any facts that would suggest that she is an eligible employee under the Rehabilitation Act. LREI also does not address this claim. The only manner in which Pianoforte mentioned the Rehabilitation Act was by checking a box on her original *pro se* complaint form; indeed, she indicated that she wished to bring suit under all the statutes provided on the form. Doc. 2 at 4. In a letter motion for conference, LREI raised the concern that Pianoforte had checked every available box on her original *pro se* complaint form merely for the sake of "expediency [rather] than the intentional assertion of viable claims." Doc. 9 at 1. In any case, because Pianoforte does not allege any facts that would indicate that LREI is either a "program or activity receiving Federal financial assistance or [a] … program or activity conducted by any Executive agency[,]" 29 U.S.C. § 794, she has failed to state a plausible claim for relief under the Rehabilitation Act. Moreover, even if Pianoforte did state a plausible claim for relief under the Rehabilitation Act, that claim would be time-barred. Therefore, the claim will be dismissed with prejudice.

7

"If a plaintiff does not file suit within 90 days of his or her receipt of the Right-to-Sue letter, the plaintiff's suit must be dismissed, save extraordinary circumstances." *Spira v. Ethical Culture School*, 888 F. Supp. 601, 602 (S.D.N.Y. 1995) (citing *Cheng v. Metropolitan Life Ins. Co.*, No. 94 Civ. 0808 (MBM), 1995 WL 37843, at *3 (S.D.N.Y. Jan. 31, 1995)). Indeed, the Supreme Court has stated that equitable tolling should only be applied "sparingly," and that it is not appropriate where a plaintiff has failed to exercise due diligence. *Irwin v. Dep't. of Veterans Affairs*, 498 U.S. 89, 96 (1990). "In deciding whether to toll the filing time period, courts seek to balance the necessity of adhering to procedural requirements with equitable considerations of dismissing claims on technicalities*." Ghosh v. New York City Dept. of Health*, 413 F. Supp. 2d 322, 329 (S.D.N.Y. 2006). In order to merit equitable tolling, a plaintiff must show either: (1) that she actively pursued judicial remedies but filed a defective pleading during the specified time period, (2) that she was unaware of her cause of action due to misleading conduct of the defendant, or (3) a medical condition or mental impairment prevented her from proceeding in a timely fashion. *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003). Specific considerations may include "whether the plaintiff believes she has complied with the requirements, whether there is evidence of any affirmative misconduct on the part of the defendant, and whether the plaintiff received sufficient notice." *Harrison v. Potter*, 323 F. Supp. 2d 593, 601 (S.D.N.Y. 2004) (citation omitted).

The Second Circuit generally enforces the 90-day filing deadline specified in an EEOC Right-to-Sue letter even where a plaintiff is *pro se*. *See, e.g., Sanchez v. Nat. Cleaning Co.*, 11 F. Supp. 2d 453 (S.D.N.Y. 1998) (90-day filing deadline applied, barring *pro se* plaintiff's claim); *Spira*, 888 F. Supp. (S.D.N.Y. 1995) (90-day filing deadline applied against *pro se* plaintiff even though EEOC officer made an oral representation to plaintiff stating that the 90 days were

calculated in terms of business days, rather than calendar days). Status as a *pro se* plaintiff is therefore insufficient in itself to warrant equitable tolling; instead, a plaintiff must independently make a "specific personal showing" of extraordinary circumstances that prevented her from meeting her filing deadline. *See Gomez v. Henry St. Settlement*, No. 20 Civ. 5585 (AT) (BCM), 2021 WL 4943509, at *6 (S.D.N.Y. July 7, 2021).

Pianoforte does not allege that she actively pursued judicial remedies during the 90-day period following her receipt of a Right-to-Sue letter from the EEOC. And while affirmative misconduct by the EEOC "upon which the plaintiff demonstrated that he had relied to his detriment" may merit equitable tolling, *Spira*, 888 F. Supp. at 602 (quoting *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 891 (2d Cir. 1995) (internal quotations omitted)), Pianoforte has not alleged any misconduct on the part of EEOC that caused or contributed to her failure to file this lawsuit before the 90-day deadline. Pianoforte does, however, assert that medical conditions and/or mental impairments have prevented her from proceeding in a timely fashion.

In order to demonstrate that a medical condition or mental impairment constitutes "extraordinary circumstances" a plaintiff must meet a "high bar." *Vlad-Berindan v. LifeWorx.*, No. 13 Civ. 1562 (LB), 2014 WL 1682059, at *7 (E.D.N.Y. Apr. 28, 2014) *aff'd sub nom. Vlad-Berindan v. Life Worx Inc.*, 599 F. App'x 415 (2d Cir. 2015) (citing *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011)). Pianoforte bears the burden to show that her condition was of such a nature that she was unable to manage her affairs and incapable of comprehending and protecting her legal rights. *Id.* (citing *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)). In order to meet that burden, "a conclusory and vague claim" will not suffice; Pianoforte must proffer "a particularized description of how [a] condition adversely affected [her] capacity to function generally or in relationship to the pursuit of her rights." *Id.* (quoting *Webster v. Potter*, 746 F.

9

Supp. 2d 635, 641 (S.D.N.Y. 2010) (internal quotation marks omitted)). Whether equitable tolling is appropriate is not a question of the illness' severity, but rather "whether a party can show that the illness was so extraordinary that it functioned as a complete bar to the procedural steps required to file suit in a timely fashion." *Id*. (quoting *Kantor-Hopkins v. Cyberzone Health Club*, No. 6 Civ. 643 (DLI) (LB), 2007 WL 2687665, at *7 (E.D.N.Y. Sept. 10, 2007)). Indeed, Pianoforte must show that her alleged medical conditions and/or mental impairments did in fact cause her delayed filing. "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

Pianoforte has failed to meet her burden of showing "extraordinary circumstances" that would merit equitable tolling. For one, she has not presented a particularized description of the conditions that allegedly prevented her from timely filing her lawsuit. While Pianoforte pled that she has suffered from a concussion, traumatic brain injury, head injury, and post-traumatic stress disorder, *see* Doc. 11 at 5, she has not alleged specifically how any of these impairments in fact caused her late filing. *See Guinyard v. Apfel*, No. 99 Civ. 4242 (MBM), 2000 WL 297165, at *4 (S.D.N.Y. Mar. 22, 2000) (holding that equitable tolling would not be appropriate even where plaintiff made particularized allegations that related to the merits of her underlying disability claim, yet nonetheless failed to explain why her complaint seeking judicial review was delayed). By the same token, "[w]hile the effects of the COVID-19 pandemic could conceivably present extraordinary circumstances, a petitioner cannot meet his burden of establishing that a court should apply the doctrine of equitable tolling simply by making a passing reference to the

pandemic or the resulting lockdown." *Hines v. U.S.*, No. 20 Civ. 10064 (CS), 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021) (quoting *U.S. v. Aigbekaen*, No. 15 Civ. 462, 2021 WL 1816967, at *1 (D. Md. May 6, 2021)) (internal quotations omitted).  Second, even if Pianoforte had established the existence of extraordinary circumstances, her failure to demonstrate that she exercised reasonable diligence breaks "the link of causation between the extraordinary circumstances and the failure to file." *Id*.  Therefore, the doctrine of equitable tolling is not appropriate under the circumstances.

As a result, Pianoforte's claims of discrimination and retaliation under the ADEA, Title VII, the Rehabilitation Act of 1973, and the ADA are dismissed as untimely.

### b. FMLA

At the outset, the Court notes here as well that it is unclear whether Pianoforte even meant to allege the FMLA claim.  The only instance in which Pianoforte mentioned the FMLA was when she checked a box on her original *pro se* complaint form.  But she also checked every available box on that form, indicating that she wished to bring suit under all the statutes provided on the form.  *See supra* n. 5.  In any event, in neither of her complaints does Pianoforte allege any facts showing that she was an eligible employee under the FMLA or that LREI is an employer as defined by the FMLA.  For its part, LREI does not address the FMLA claim.

In order to establish a *prima facie* case for interference under the FMLA, Plaintiff must establish: "(1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of America*,

11

817 F.3d 415, 424 (2d Cir. 2016); *see also Kennebrew v. N.Y. City Hous. Auth.*, No. 01 Civ. 1654, 2002 WL 265120, at *19 (S.D.N.Y. Feb. 26, 2002) (Peck, Magistrate J.) (quotations omitted).

As she has not addressed any of the requirements of the statute, Pianoforte's FMLA claim is dismissed without prejudice.

### c. Section 1981

A plaintiff alleging racial discrimination under § 1981 must establish that: (1) she is a member of a racial minority group; (2) the defendant intended to discriminate against her on the basis of race; and (3) the discrimination concerned an activity enumerated in the statute, such as employment. *Johnson v. City of New York*, 669 F. Supp. 2d 444, 449 (S.D.N.Y. 2009). In the context of an employment discrimination claim under § 1981, a plaintiff must establish an employer's discriminatory intent. *See Littlejohn v. City of New York.*, 795 F.3d 297 (2d Cir. 2015). Although a plaintiff is not required to plead facts proving each element of a *prima facie* case of discrimination at the pleading stage, her allegations must provide "plausible support" for a "minimal inference" that the employer was motivated by "discriminatory intent." *Littlejohn*, 795 F.3d at 311. Further, those allegations must be "fact-specific." *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 296 (S.D.N.Y. 2011) (internal citations and quotation marks omitted). Conclusory or naked allegations will not do.

"An inference of discrimination can arise from circumstances including . . . the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (internal quotation marks and citation omitted). Here,

Pianoforte does not allege that her employer used ethnically degrading terms or made invidious comments about others in her protected group. Pianoforte's claim of racial discrimination centers around the allegation that she—a white and American Indian woman—was replaced as a receptionist by someone of another race and sex, a Hispanic man named Pedro Ramirez. On this point, she alleges Ramirez worked the same hours she worked and had the same duties she had, but that he lacked her long-term experience. Doc. 19 at 2. Specifically, Pianoforte alleges that Ramirez had previous employment experience as a stock associate, illustrator and graphic designer, but no experience serving as a receptionist. *Id*. at 3. Pianoforte also alleges that prior to her termination, some of her hours were given away to a Hispanic woman named Alba. *Id*. at 6.

When a plaintiff seeks to make her *prima facie* case by reference to the disparate treatment of an allegedly similarly situated employee, "the plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001). A plaintiff need not show that a comparator was an "identically situated employee," just that she was "similarly situated in all material respects." *Id*. at 53–4 (citing *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)) (emphasis in original). Further, such employee "must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *Kearney v. ABN AMRO, Inc.*, 738 F. Supp. 2d. 419, 426 (S.D.N.Y. 2010) (quoting *McGuinness*, 263 F.3d at 54) (internal quotation marks omitted).

Employment characteristics which can support a finding that two employees are "similarly situated" include "similarities in education, seniority, performance, and specific work

duties," *DeJesus v. Starr Tech. Risks Agency, Inc.*, No. 03 Civ. 1298 (RJH), 2004 WL 2181403, at *9 (S.D.N.Y. Sept. 27, 2004), and similar requirements for skill, effort, and responsibility for jobs performed "under similar working conditions." *DeJohn v. Wal-Mart Stores E., LP*, No. 09 Civ. 01315 (GTS), 2013 WL 1180863, at *6 (N.D.N.Y. Mar. 20, 2013). Although whether two employees are similarly situated is ordinarily a question of fact for the jury, courts have dismissed § 1981 disparate treatment claims at the pleading stage. *See, e.g.*, *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1993) (affirming dismissal of plaintiff's § 1981 claim because plaintiff's assertions that "the panel members were white and that he is Bengali" is too conclusory and insufficient to show racial bias).

Here, Pianoforte does not show that she was similarly situated in all material respects to Ramirez. *See also Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *Brown v. Daikin America Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quoting *Graham*, 230 F.3d at 39). While she alleges that she and her replacement shared the same on-the-job duties and the same hours, *see* Doc. 2 at 5, and that her replacement does not have the "same long term experience" as her, Doc 19 at 2, she does not specify what these duties and hours are, and only offers minimal information about his previous career experience. Doc. 19 at 3. Beyond this, she does not proffer any other—or more specific—allegations relating to her replacement's employment characteristics, including his education, seniority, performance, work duties, skills, or working conditions. In other words, she cannot show that she and her replacement were similarly situated in any material respect. While Pianoforte also points to another alleged instance in which she was passed over in favor of a Hispanic employee, she provides no information at all concerning Alba's education, seniority, performance, work duties, or skills. Doc. 19 at 6.

In sum, Pianoforte's § 1981 claim relies solely on the conclusory allegation that her race is different from that of her replacement. In effect, Pianoforte asks the Court to conclude that whenever one employee is replaced by another of a different race, that is sufficient to give rise to an inference of discrimination. It is not. Pianoforte's § 1981 claim is therefore dismissed without prejudice.

### d. Pianoforte's NYSHRL and NYCHRL Claims

The doctrine of supplemental jurisdiction is traditionally "a doctrine of discretion, not of … right." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Subsection (c) of § 1367 enumerates circumstances in which a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a)." 28 U.S.C. § 1367(c). One such circumstance is where, as here, "the district court has dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c)(3).

Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional "values of judicial economy, convenience, fairness, and comity" in deciding whether to exercise jurisdiction. *Kolari*, 455 F.3d at 122 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The Supreme Court has noted that in a case where all federal claims are eliminated before trial, "the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Cohill*, 484 U.S. at 350 n. 7); *see also Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed

reading of applicable law ... [I]f the federal law claims are dismissed before trial ... the state claims should be dismissed as well."). Accordingly, as Pianoforte's federal claims have all been dismissed, the Court declines to exercise jurisdiction over the remaining state law claims. While Pianoforte is time-barred from pursuing her federal claims in a new action, she may still be able to pursue her state and city law claims at the state level. *See Baptiste v. Create Young Adult Ctr.*, 11 Civ. 4474 (NRB), 2012 WL 3834664, at *2 (S.D.N.Y. Aug. 22, 2012).

## IV.     CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Pianoforte's ADEA, Title VII, Rehabilitation Act, and ADA claims is GRANTED with prejudice, as they are time-barred. Her FMLA and § 1981 claims are dismissed without prejudice, as are her NYSHRL and NYCHRL claims. Plaintiff may file a second amended complaint that complies with this Opinion and Order, if at all, by August 29, 2022. If Pianoforte does not file a second amended complaint by that date, the case will be closed. The Clerk of Court is respectfully directed to terminate the motion, Doc. 13.

It is SO ORDERED.

Dated:   July 13, 2022
         New York, New York

_____
Edgardo Ramos, U.S.D.J.